EMMONS v. UNITED STATES.

*(Circuit Court, D. Oregon. April 18, 1890.)*

1. PUBLIC LANDS—VOID ENTRIES—ACTION TO RECOVER PRICE.
   Actions are maintainable in the national courts, against the government of the United States, to recover the purchase price paid upon void entries of public land, under the provisions of the act of congress of March 3, 1887, authorizing suits against the United States.

2. SAME—ACTIONS BY ASSIGNEES.
   Such actions cannot be maintained by assignees of the parties who made the void entries; assignments of all claims against the government being declared void by section 3477, Rev. St., unless made with prescribed formalities, after issuance of warrants to pay the claims.

3. SAME—PLEADING.
   A petition to recover the purchase money paid to the United States for land, which shows an allowance of the proposed entry by the register and receiver of the proper district land-office, and the issuance of a certificate to the entry man, and fails to allege a surrender of such certificate, or to account therefor, or to allege a relinquishment of all claims to the land under such entry, is insufficient.

*(Syllabus by the Court.)*

At Law.

*Zera Snow,* for plaintiff.

*U. S. Dist. Atty. May,* for the United States.

HANFORD, J. This cause has been argued and submitted upon a demurrer to the petition, based upon two grounds, appearing, it is alleged, upon the face of the petition, viz., insufficiency of the facts to justify the action, and want of jurisdiction in the court of the subject-matter of the action. The allegations of the petition, in brief, are to the effect that three persons, each of whom was entitled to the benefits of the provisions of the act of congress providing for the sale of timber lands in the states of California, Nevada, and Oregon, and in the territory of Washington, approved June 3, 1878, in good faith, and in due conformity to the requirements of said act, and the rules and regulations of the department of the interior, made their respective applications to purchase 160 acres of timber land in Oregon, and made the required payments therefor, including fees amounting to the aggregate sum in each of the three cases of $410; that the said applications were allowed by the register and receiver of the proper district land-office, and final certificates of purchase were issued by the receiver; that afterwards the commissioner of the general land-office, claiming that the lands were not timber lands subject to entry under said act arbitrarily canceled the several entries so made, and directed such cancellation to be entered in the records of the district

land-office, which directions have been complied with, and ever since the lands have been listed as vacant public lands subject to further entry, and in consequence the said entry men have not received, and cannot receive, patents for the land; that the government has neglected and refused, and now refuses, to refund the money paid for the land by the entry men; that the said entry men, respectively, before the signing of the petition, sold, assigned, and transferred the land sought to be entered, and their interests therein, and their several claims against the government, for the money paid as aforesaid to the plaintiff, who is still the holder and owner thereof; that the rights upon which the action is founded accrued within six years from the time of filing the petition, and that the same have not been heretofore adjudicated by any court, department, or commission authorized by law to hear and determine the same.

The plaintiff seeks in this single action to recover the full amount of purchase money and fees paid by the three entry men; the particular facts of each of the three assigned claims being separately set forth in the petition. The plaintiff assumes that the right to maintain this action in this court is given by the act of congress of March 3, 1887, entitled "An act to provide for the bringing of suits against the government of the United States." Section 1 of this act enumerates the several kinds of claims against the government made cognizable in the courts, as follows:

"*First.* All claims founded upon the constitution of the United States or any law of congress, except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty, if the United States were suable: provided, however, that nothing in this section shall be construed as giving to either of the courts herein mentioned jurisdiction to hear and determine claims growing out of the late civil war, and commonly known as 'war claims,' or to hear and determine other claims which have heretofore been rejected or reported on adversely by any court, department, or commission authorized to hear and determine the same. *Second.* All set-offs, counter-claims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the government of the United States, against any claimant against the government in said court: provided, that no suit against the government of the United States shall be allowed under this act unless the same shall have been brought within six years after the right accrued for which the claim is made."

By the second section of the act, jurisdiction concurrent with the court of claims of suits founded upon the above enumerated matters is given to the district courts where the amount of the claim does not exceed $1,000, and to the circuit courts where the amount exceeds $1,000 and does not exceed $10,000. In the argument in support of the demurrer, counsel for the government contends that this act, authorizing the prosecution of certain classes of suits against the government in the national courts, must be so construed as to not include a suit or action upon a claim for repayment of the price of land erroneously sold or entered, and in support of this contention cites that part of the opinion of the supreme court of the United States in the case of *U.*

*S.* v. *Jones,* 131 U. S. 1, 9 Sup. Ct. Rep. 669, in which the idea is suggested that the management and disposal of the public domain has always been regarded as more appropriately belonging to the political department of the government than to the courts, and more a matter of administration than judicature. To this contention, I cannot yield. The positive provisions of the statute, expressed in language free from all ambiguity, authorize suits to be brought and prosecuted against the government, in its own courts, in all cases founded upon claims for the mere payment of money other than those particular classes of claims which are by the act specifically excepted, in which excepted classes the claims set forth in the petition in this case are not included. In the case of *U. S.* v. *Jones* the supreme court decided that the statute authorizes suits against the government only when founded upon mere money demands, and no other point was decided. The reasons given for the decision do not support any such rule of construction as would, in effect, so limit the statute as to add other classes of mere money demands to those which the statute itself, in terms, excepts from its provisions. In a case where an application to purchase part of the public domain has been disallowed after payment of the fixed price therefor by the applicant, a demand for repayment of the money, if not a matter of absolute right, free from all question, can only involve questions proper for judicial determination, and which cannot be regarded as being in any sense political.

It is further urged that section 2362 of the Revised Statutes of the United States, and the act of June 16, 1880, providing for the repayment of certain fees, purchase money, and commissions paid on void entries of public lands, provide an adequate remedy for all cases of this character, and the exclusive remedy. I agree that the statute referred to provides a method of procedure to obtain repayment of the purchase money in cases like the one at bar, and, in my opinion, the conditions therein prescribed upon which repayment can be made are just and reasonable, and must necessarily be complied with before any repayment can be lawfully made or adjudged. But I do not agree that the remedial provisions of the act of 1887 can rightfully be so abridged by construction as to preclude the courts from taking cognizance of any case merely because, by another law, an officer of the executive branch of the government is authorized, though not compellable, to satisfy the claim by directing payment thereof. To so hold would practically nullify the statute in its entire scope.

This act contains certain exceptions of cases which, because thus excepted, cannot be litigated in the courts; but no case is thus excepted because authority is given by some other law to the executive branch of the government to adjust and satisfy the claim. I do not understand the proviso attached to the first subdivision of the first section of the act to bar an action upon a claim by reason of a decision of a department authorized to pass upon it adverse to the claim, unless such adverse decision was rendered prior to the date of the act, although, in the argument, counsel on both sides seemed to assume that it does, and the pe-

tition was evidently drawn with that idea in mind. The word "heretofore," as it is used in this proviso, can have no other office than to limit the application of the exception to cases which had been determined and closed in accordance with the provisions of existing laws prior to the enactment of this law.

The next proposition advanced in support of the demurrer is that the act of 1887 does not authorize suits to be brought against the government by the assignee of a claim, and that the privilege of suing the government is personal to the original party to a claim, and not assignable. I recognize that there is considerable force in the argument on this point; but I should hesitate to sustain the demurrer, or hold that an assignee of a claim cannot sue the government, on these grounds alone. However, section 3477 of the Revised Statutes makes all transfers and assignments of any claim upon the United States, whether absolute or conditional, whatever may be the consideration therefor, and all powers of attorney, orders, or other authority for receiving payment, absolutely null and void unless executed, with certain prescribed formalities, after the allowance of the claim and the issuance of a warrant for the payment thereof. By this statute the assignments alleged in the petition of the several claims sued on are made void, and therefore the plaintiff cannot maintain this action. If he can collect the money claimed at all, it can only be by an application to the secretary of the interior, made in conformity to the requirements of the statute of 1880, or section 2362 of the Revised Statutes, which authorizes payments to assignees. These statutes, being special, providing for relief in particular cases, to be obtained in a prescribed manner and upon specified conditions, can be invoked only for the benefit of him who observes and conforms to their requirements.

If the plaintiff could maintain the action, I should still feel bound to sustain the demurrer for the reason that the petition does not show that the receiver's certificates issued as therein alleged have been surrendered or accounted for, nor that there has been any relinquishment of claims to the land by the original entry men or the plaintiff. There can be no valid claim for return of the purchase money while yet the land itself is claimed, especially as in this case it is not shown that the entries were invalid. The petition alleges that the commissioner of the general land-office, in making the orders canceling the entries, did so claiming that the lands were not timber lands subject to entry as such under the act of congress authorizing the sale of such lands. This is ambiguous. It is not an assertion that the commissioner ever claimed or decided, as a matter of fact, that the lands are not timber lands, unfit for cultivation, and chiefly valuable for the timber thereon. If, in fact, the commissioner did find all the facts to be favorable to the entry men, and only disallowed their entries in consequence of an error in a matter of law, such ruling would not be inconsistent with what is alleged in the petition; and yet, in such a case, the plaintiffs' vendors would not necessarily lose their lands, for, upon the issuance of patents to the lands to other parties, the lawful claimants, by appealing to a court of equity,

could have the errors corrected, and acquire perfect titles, by compelling conveyances from the patentees. It is, therefore, necessary that all claim and controversy under the entries should be finally terminated, and that the fact of such termination be evidenced by matter of record, or acknowledged by the party by a surrender of the certificate of purchase and a relinquishment of the land, before a party can place himself in a position to maintain an action for the purchase money. The petition may be cured of its imperfection in this regard by an amendment, if the facts are such as to warrant it; and this is my reason for calling attention to a defect not referred to in the argument. An order sustaining the demurrer will be entered; and, unless leave to amend the petition shall be asked, a judgment will be given for the defendant.